ILLINOIS CENTRAL RAILROAD COMPANY *v.* FRANK DENHAM ET AL.

RAILROADS. *Plantation roads. Crossings. Code* 1892, § 3561.

    A railroad company which leaves a train of cars standing upon a plantation road-crossing for six consecutive days, so as to deprive the owner of its use continuously during that time is liable under code 1892, § 3561, providing that every railroad shall make and maintain convenient and suitable crossings over its track for necessary plantation roads and giving a penalty for failure to do so.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Denham and another, appellees, were plaintiffs in the court below; the railroad company, appellant, was defendant there. From a judgment in favor of plaintiffs the defendant appealed to the supreme court, assigning as error the over-ruling of a demurrer to plaintiff's declaration.

*Mayes & Harris,* for appellant.

While we may concede that there might be such a permanent obstruction of a crossing by the railroad company as to amount to its utter destruction, and a violation of the statute, we insist that there must be a manifest intention on the part of the railroad company to cease to maintain the crossing. The mere temporary obstruction by placing a train of cars across the crossing, while it may, in a proper case, entitle the party to recover damages, yet it is not, and cannot be tortured into a failure to maintain the crossing within the meaning of the statute, so as to subject the railroad company to a penalty of $250.00.

If a railroad company temporarily obstructs the crossing with its train needlessly or negligently, and the landowner is dam-

aged, he has his right of action. But certainly he is not entitled to recover a penalty simply because he may be temporarily inconvenienced, the crossing being in every other respect what the law requires, convenient and suitable.

Penal statutes are strictly construed. All that the railroad company was required to do was to construct and maintain suitable and convenient crossings, and it is a failure to do this, for which it is liable to a penalty.

If a railroad company has constructed and has kept up, as the declaration shows, through all this time a suitable and convenient crossing, it has complied with the statute, and the mere fact that it temporarily obstructed the crossing with its train would not entitle the plaintiff to the penalty, while he might have an action for damages if he suffered from it. There is no reason for inflicting the railroad company with a penalty in this case, because the legislature has not provided one for the obstruction of a farm crossing, as it has for a public highway.

In *Railway Company* v. *Jones,* 73 Miss., 397, the court held the statute must be strictly construed, and the court has adhered to this rule of imposing upon this highly penal statute the most rigid construction.

If the court should hold that the judgment of the court below in this case is correct, then any temporary obstruction of a crossing by a train which subjected the landowner to temporary inconvenience would subject the railroad company to a penalty of $250—more than twice as much as is imposed upon the railroad company for obstructing public highways.

*Harper & Potter,* for appellees.

We do not deny that the statute is penal or the general rule that such statutes should receive a strict construction, but we do deny that by invoking this general rule, the purpose and effect of the statute can be destroyed or impaired. *Board of Education* v. *Railway Co.,* 72 Miss., 236.

To carry out the purpose and effect of the statute, our court

has held that the word "necessary" as used in the statute, meant "reasonably convenient" and that the statute alluded to pasture lands as well as agricultural. *Alabama, etc. R'y Co.* v. *Odeneal,* 73 Miss., 34.

Two or more plantation roads may be reasonably necessary upon the same place. *Railway Co.* v. *Odeneal, supra; Railway Co.* v. *Ligon,* 74 Miss., 176.

Our court also denied a construction claimed by the railroad, that would impair the purpose and use of the act in holding that tenants were included in the words "persons interested" and might maintain the action after the lease expired. *Railway Co.* v. *Ligon, supra.* That a place containing four acres was entitled to a "plantation road," and that a place need not be enclosed to give the right to have a crossing. *Hardy* v. *Railway Co.,* 73 Miss., 719.

The appellant contends that leaving a train of cars stretched over a crossing for a great length of time, and wholly destroying its use, is not a failure to maintain, within the meaning of the statute.

The word "maintain," acording to Webster, means "To hold or keep in any particular state or condition. Not to suffer to cease or fail."

As defined by the Century Dictionary, it means "To hold in an existing state or condition, to keep in existence or continuance, to preserve from lapse, decline, failure or cessation. Keeping up." And as defined by the Standard, it means, "To hold or preserve in any particular state or condition; keep free from failing, declining or ceasing."

The statute intended that the road shall be kept in an open, passable condition, that will give the farmer free access to his crops, so that they may be tilled, gathered and marketed, or as stated by our court in the Odeneal case, "The plain object of the act was to compel railroad companies to give the owners of farms a convenient mode of access from one part to the other, when divided by a railroad," and this condition the railroad must

"continue, not suffer to cease or fail" except as the necessity of the situation may require.

Counsel for appellant argue that if the appellees sustained damages, that they had an action at law, but the court will see that the gravamen of such an action would of necessity be the failure of the railroad to maintain the crossing.

Argued orally by *J. B. Harris,* for appellant, and by *W. H. Potter,* for appellee.

CALHOON, J., delivered the opinion of the court.

Section 3561 of the code (1892) deals with private rights, and its purpose was to secure to the landholder of inclosed land easy access to his property on each side of the railroad. In order to effectuate this purpose it requires every railroad corporation "to make and maintain convenient and suitable crossings over its track for necessary plantation roads." To insure compliance with this law, so necessary to individuals in this agricultural state, it further provides that, "for any failure so to do, the railroad company shall be liable to pay $250, to be recovered by the person interested."

The declaration here charges that the railroad company made the crossing and maintained it for several years, but that, for six consecutive days at one time continuously, it left a train over it, wholly depriving plaintiffs of its use, and hindered, delayed, and injured them, that crossing being the only way of egress they had from their residence and for the transaction of their business, and that, for the six days, the company "wholly neglected and refused to maintain said crossing," and, the instrument concludes, "to plaintiff's damage $250," etc.

It is contended for the company that the meaning of the statute is that the railroad companies should construct the crossings at their own expense, and maintain them at their own expense, and had no reference to temporary obstructions they might willfully put on them, though it is conceded that this law

would apply to a case where there is an intention by the railroad company to permanently obstruct the crossing. This would bring up the question as to what should be considered such a permanent obstruction as would be equivalent to a violation of the duty to maintain.' It would seem that a deliberate and willful obstruction for six days continuously would be as much a violation of the duty to maintain as would be an obstruction for six weeks or six months. We think the word "maintain" in the statute should not be restricted to such narrow sense. The object was to maintain the crossing for use, and the question is not merely whether the crossing was kept in good order. In however perfect condition it might be kept, the statute would have no force, and be of no benefit whatever, if the use for which it was designed be not maintained by the company so far as it is concerned. We think there was no error in overruling the demurrer to the declaration. If a case should be made on the facts showing that the obstruction was unavoidable or necessary, there would be a different question before us.

*Affirmed.*